NEW JERSEY TRACTION COMPANY, PLAINTIFF IN ERROR, v. HARRY BRABBAN, DEFENDANT IN ERROR.

1. Inaccurate statements in a charge which clearly appear to be incapable of producing injury to the party complaining of them, are not grounds for reversal.
2. To justify the admission of expert evidence, the subject must be one not within common knowledge, and the witness offered must appear to be possessed of special knowledge concerning the subject.

On error.

This action was brought by Brabban, defendant in error, against the New Jersey Traction Company, plaintiff in error, to recover damages for the loss of one foot occasioned by its being run over and crushed by a car of the company.

A judgment in his favor was removed to the Supreme Court and there affirmed without any opinion being delivered.

By this writ the judgment of the Supreme Court has been brought here for review.

·For the plaintiff in error, *Edward Q. Keasbey.*

For the defendant in error, *Samuel Kalisch.*

The opinion of the court was delivered by

MAGIE, J. The argument for plaintiff in error in this court has been chiefly directed to two of the assignments of error, viz., (1) that based upon the exception to the refusal of the Circuit Court to nonsuit Brabban, and (2) that based upon the exception to the refusal of that court to direct a verdict in the company's favor.

It is unnecessary to review the evidence in detail. It is sufficient to say that, upon careful consideration, we conclude that there was evidence from which the jury could justly find the company's agents guilty of culpable negligence producing Brabban's injury, and that although there was evidence from

which negligence on his part, contributing to his injury, might be inferred, yet there was contradictory evidence, which, if believed, repelled and rendered impossible such an inference. It was a clear case for a jury, and the judgment cannot be disturbed because it was so treated.

Errors have also been assigned upon the charge of the trial judge, on the ground that, in two instances, he inaccurately stated evidence which had been produced.

The bills of exception show that, at the close of the charge, the judge's attention was called to the alleged inaccuracies, and he declared that his statements were supported by his notes. But as he has sealed exceptions which include the evidence, presumably from the stenographer's notes, and as it appears therefrom that the statements complained of were not accurate, the fact of inaccuracy must be assumed.

But inaccurate statements which appear clearly to have been incapable of producing any injury to the party who complains of them, ought not to be ground for reversal. We think the inaccuracies here complained of could not have been injurious to the company.

In one instance the presumed inaccuracy occurred in a statement respecting the evidence given by one Voorhis, who was a material witness for the company. The claim of the company was that Brabban was injured when he was attempting to board a car in rapid motion. By the stenographer's notes it appears that Voorhis admitted that he had not observed whether the car had stopped or not before he perceived Brabban having hold of the car. By way of explanation of his failure to observe, Voorhis stated that he was in conversation with a bystander at the time. The judge, plainly referring to this explanation, stated that he had declared that he was then reading a newspaper. But this inaccuracy could not have been harmful to plaintiff in error. If it could have misled at all, it would have been in its favor, for the failure of their witness to observe whether the car stopped or not, which failure might affect the force of his evidence of what he afterward observed, would have been more satisfactorily

accounted for, if his eyes had been occupied with reading, than it would have been if he was only engaged in conversation which permitted such observation as he could have made with his eyes.

The other inaccuracy complained of occurred in the statement of the circumstances attending the accident. Brabban's claim was that he had been about to step on a car of the company, which had, at his signal, come to a stop, and that he had taken hold of the hand-rail, attached to the car, with his right hand, and raised a foot to make the step, when the car, which was going towards his right, made a sudden jerk which drew him off his balance. In his evidence he had left it uncertain which foot he had raised when the sudden movement came. Monroe, one of his witnesses, on direct examination, left the question doubtful, but on cross-examination he distinctly testified that Brabban had his left foot raised. The judge, in directing the attention of the jury to the probability of Brabban's being thrown from his feet as he testified, by a sudden movement of the car, inaccurately stated that he had his right foot raised at the time. But this was clearly inocuous to plaintiff in error, for, had his right foot been raised, he would have been far less likely to have been drawn from his balance as he described, than he would have been if his left foot had been raised.

It is further argued that there was error in the rejection of an offer of evidence on the part of the company.

One Dietz, called by it, testified that one of his legs had been amputated four inches below the knee and that he had worn an artificial leg since 1865. He also testified that he was a machinist and employed in making artificial legs, or parts of them. Thereupon the company made the following offer :

"Mr. Keasbey—I wish to offer proof that this man, being familiar with artificial legs and a manufacturer of them, has worn one for the last thirty years, and that he is engaged in work that requires him to stand from morning till night, and that he has an artificial leg that is put on nearly up to

the knee, and I think that when that is shown it will be a matter for the court and jury to say whether another man, who has a leg like that, may not be able to stand."

This offer was rejected and an exception was allowed.

The first observation upon this offer respects the limited purpose for which it was made. The purpose avowed was that, from the evidence offered, the jury might infer that Brabban might, by the use of an artificial leg, be enabled to stand. But that persons maimed as he was are able to stand by the use of an artificial leg, is matter of common and universal knowledge, and expert evidence in respect thereto is inappropriate and inadmissible. *Cook* v. *State*, 4 *Zab.* 843.

If the intent of the offer was broader, and the trial judge might have considered that the company designed to rely on the evidence offered as justifying an inference that Brabban, by the use of an artificial leg, could work effectively as Dietz did, the offer was still objectionable.

Brabban had proved that the amputation of his foot had disabled him from working at his trade, which was that of an upholsterer. Evidence properly tending to show that, by the use of an artificial leg, he could resume working at his trade or could do other work, was clearly admissible; and, as the capacity of a man thus maimed to do various kinds of work by the use of an artificial leg is not a matter of common and universal knowledge, evidence from those who, by observation and otherwise, had acquired special knowledge on the subject would likewise have been admissible.

Had it appeared that Dietz was accustomed to fit and adjust to maimed legs artificial substitutes and to observe how persons thus treated were enabled thereby to use their powers, I think he would have been shown to be possessed of special knowledge on the subject. His own experience might properly form part of the observations by which he acquired such knowledge. Upon such proof, I think he would have been competent to testify to the special knowledge thus acquired, and also, upon an examination of Brabban's leg or a fair description of its condition, to express an

opinion as to the possibility of adjusting thereto an artificial leg, which would enable him to do certain work, and the probability that, by its use, he could do such work.

But the evidence admitted and that included in the offer did not show that Dietz was possessed of the special knowledge which rendered his evidence, on the lines above indicated, admissible.

The offer was, therefore, properly rejected.

After the charge was completed, counsel for the company excepted to "the rule of law laid down with reference to the boarding of electric cars," and an exception was sealed in the language quoted. Counsel immediately added to his exception "as distinguished from steam cars," and another exception was allowed to "all the court said on that point," and was thus sealed. This medley of exceptions must be treated as a single exception to what the court charged on the subject, and, strictly, the exception should have thus been allowed and sealed.

Turning to the charge, we find that the trial judge laid down, as a general rule, that it was negligence to attempt to board a moving car propelled by steam, but that it was for a jury to say, under all the circumstances, whether it was a negligent act to board a moving electric or horse car. But he immediately added that the rule thus stated was entirely inapplicable to the case in hand, because the case had been tried by Brabban on the theory that the car which injured him had stopped when he attempted to board it, and the whole charge presented the case to the jury upon that theory, so that it is obvious that the verdict indicates a finding that the car did stop. It is unnecessary to consider the propriety of a rule which, though stated to the jury, was expressly declared to be inapplicable to the case before them.

None of the exceptions prevailing, the judgment below must be affirmed.

*For affirmance*—THE CHANCELLOR, GUMMERE, DIXON, GARRISON, MAGIE, REED, BOGERT, BROWN, SIMS. 9.

*For reversal*—None.