GEORGE W. CROSBY, PLAINTIFF, ALSO PLAINTIFF IN ERROR, v. SAMUEL I. WELLS, DEFENDANT, ALSO DEFENDANT IN ERROR.

Argued March 20, 1906—Decided March 4, 1907.

1. *a.* When, by consent, there is read, at the trial of one action, the testimony of a witness out of the state, taken originally in another action, the propriety of a question and answer, part of the cross-examination in such other action but really part of the examination-in-chief in the later action, is not to be tested by the strict rules of cross-examination. So, too, in taking the testimony of such witness, under a notice by virtue of section 45 of the Evidence act of 1900, the attorney of the adverse party, in questioning the witness, is not bound by the strict rules of cross-examination. *b.* In the circumstances of the case in hand, opinion evidence is that which is given by a person of ordinary capacity, who has, by opportunity for practice, acquired special knowledge which is outside of the limits of common observation, and may be of value in elucidating a matter under consideration. The experiential qualifications of the witness—including his opportunity to observe the very thing under inquiry—being first shown, his special knowledge may be imparted at the trial in aid of the jurors, under questions in ordinary form.

2. A verdict may be directed for a plaintiff as properly as for a defendant, when any number of verdicts, if found otherwise than as ordered, would be set aside as without sufficient evidence to support them. When, however, as to a right of rescission, there is evidence tending to show fraudulent representations of fact by the plaintiff, and, as to an actual rescission, evidence serving to show an offer, before suit, to return the thing previously delivered, which was promptly rejected by the plaintiff, there are questions on both heads to be submitted, under instructions, to the jury, and the direction of a verdict for the plaintiff is rightly refused.

3. *a.* In theory, one of the objects of cross-examination is to bring out facts (suppressed or undeveloped in the examination-in-chief) which diminish or impeach the trustworthiness or credit of the witness. Hence, when a plaintiff, on direct examination, not only denies the sale of certain personalty by him to the defendant, but, in effect, denies such sales by him to anyone, cross-examination as to sales of such personalty by him to third persons, within the time mentioned, is a proper and legitimate inquiry, as tending to diminish the force of the plaintiff's testimony, or to impeach his credit. *b.* (1) An evidentiary fact, whether simple or complex, is relevant, when it has probative value in support of a material proposition of one of the parties. Hence, when a material proposition of a defendant is, that, at a certain time, the plaintiff had sold to him certain oil shares, and the plaintiff has endeavored to support his case by evidence going to show that, up to the time of the trial, he had never sold such oil shares to anyone, the testimony of third persons that, within the time mentioned, the plaintiff had had dealings with them in respect of such oil shares, is relevant in that it tends to contradict the plaintiff, and indirectly, if not directly, to support the proposition of the defendant. *b.* (2) Whether the testimony of such third persons should have been given as part of the defendant's principal case, instead of in rebuttal, is of no present consequence. The conduct of the trial and the general course of the examination of the witnesses rest within the sound discretion of the trial judge, and the exercise of such discretion is not reviewable on writ of error.

4. It is a sound rule, of law as well as of logic, that evidence of the act of a party, similar to the one immediately under investigation, may be offered for the purpose of showing the knowledge, intent or design of such party which are elements of his fraudulent conduct towards the other party. Hence, even in a civil action, evidence of offers by the plaintiff to sell certain oil shares to persons other than the defendant, accompanied by words commendatory of the shares, may be given by the defendant as serving to give character to the knowledge, intent or design of the plaintiff, in entering shortly afterward into a contract of sale of like shares with the defendant, and thus logically to establish particular elements of those fraudulent representations which were links in the chain of proofs of the defence.

5. A trial judge may not assume as a fact that which is in dispute, and, by his charge or otherwise, withdraw any such matter from the consideration of the jurors, thus affecting their determination. But a charge in which appears the expression, "You have also the fact," &c., is not obnoxious to this rule, when it appears that the charge, fairly interpreted, was simply to the effect that here you [the jurors] have a matter which has been put in evidence, as an element for your use in forming your conclusions and making up your verdict.

On error to the Supreme Court.

This was an action upon contract brought by the plaintiff in error, also plaintiff below, against the defendant in error, also defendant below.

The plaintiff set forth in his declaration the common counts for money, and annexed thereto, as the particulars of his demand, a copy of a promissory note made by the defendant, November 8th, 1901, for the payment of $1,600, three months after date, to the order of the plaintiff, and also a notice that judgment would be claimed for the said sum of money, with interest and costs. The defendant filed a plea of the general issue, and annexed to his plea a notice of special matter of defence, as follows: "The note set out in the plaintiff's declaration was given without consideration, and the defendant received no benefit in any way therefrom; the said note was given as a renewal of another note made by said defendant to said plaintiff, on or about the 8th day of August, 1901, for $2,100, given by the defendant to the plaintiff in payment for three thousand shares of the capital stock of the Ohio Oil Company upon a contract of purchase by the defendant from the plaintiff, which contract was afterwards rescinded by the said defendant for fraud in its procurement by said plaintiff; and that at the time of such renewal, November 8th, 1901, the defendant gave the plaintiff the note set out in his declaration, and paid him the sum of $500, without any knowledge of the fraud aforesaid."

The defendant also annexed to his plea a notice of set-off in respect of the sum of $500, paid to the plaintiff under the

circumstances mentioned in the first notice, and due and owing from the plaintiff to the defendant.

The issues joined between the parties were sent down to the county of Atlantic for trial at *nisi prius.*

The proceedings at the trial before one of the justices and a jury involved the proofs and matters following:

*a.* Formal proof having been made of the note, whereof a copy was annexed to the declaration, the plaintiff rested. Then the defendant offered evidence, which, if believed, tended to show that the original note, whereof the note in suit was a renewal, had been given by the defendant to the plaintiff on a sale by the plaintiff to the defendant of three thousand shares in the stock of the Ohio Oil Company (name changed at a later day), at seventy cents a share, and that such bargain had been brought about through representations of value and profitableness made by the plaintiff, for the most part, as being true to his personal knowledge; and that, after $500 had been paid upon the original note, and the renewal note given, investigation on the part of the defendant had brought to light fraud in the representations, and thereupon the defendant, by notice in writing and orally, had offered to return the certificate of stock and had rescinded the contract of sale. The representations above referred to were such as these: That the plaintiff held shares in the Ohio Oil Company; that the company owned thirty-five hundred acres of oil land that was very productive, having thereon fifty-five producing wells and seventeen miles of pipe line connected with the Standard Oil Company's main pipe; that the plaintiff had visited the field, and everything was all right; that the stock was safe—safe as any bank—and was paying a dividend of two per cent. a month, and that the plaintiff had $50,000 of the stock, and other persons named were taking stock. The manner of the rescission indicated by the testimony was this: After written notice, the defendant met the plaintiff at the office of the latter's attorney; he had the certificate of stock and an assignment thereof in his pocket; he said that he rescinded the contract, and had the papers with him for delivery, and he asked that the money

paid on the stock be refunded. To this answer was made that the plaintiff would not accept the papers at all.

In the presenting of the defendant's case, the written examination of one James A. Davis, taken in Ohio under a statutory notice, in another case wherein the plaintiff, Crosby, was defendant, was read by consent. It appeared that Davis was forty-six years of age, was an oil producer and driller of oil wells, had been such during his whole business life, and was at the time employed in the capacity of driller upon the land of the Ohio Oil Company, which previously he had "explored" for oil. He was actually present when the plaintiff made a visit to the oil land, in June, 1901. On the cross-examination in such other action, Davis had been asked: "Q. 86. From the exploration and examination made by you, in your opinion, were these lands profitable or unprofitable territory?" When the question was read at this trial, it was objected to as not proper cross-examination, and as dealing with a matter not proper for expert testimony, but it was allowed and answered thus: "A. As a whole, they were unprofitable."

b. When the defendant rested the plaintiff moved to strike out the whole defence, and to direct a verdict for the plaintiff for the amount of the note. The motion in both particulars was denied by the court.

c. In the plaintiff's testimony in rebuttal he gave answers on his direct examination which, if believed, tended to show that he had never sold any of the Ohio oil shares to the defendant, but had merely introduced him to one Peter Whitney, an agent of the oil company; that any representations made by him to the defendant (if made at all) were of beliefs only, founded upon information derived from others, and that the note had been made payable to him only that he might endorse it for discount at a bank, and further, to show that he, the plaintiff, still owned, at the time of the trial, all of the Ohio oil shares bought by him before August 8th, 1901.

On cross-examination the plaintiff was asked, against objection, whether he had not actually sold, or endeavored to

sell, some of his holdings in the Ohio Oil Company to Arvine .H. Phillips, Caleb E. Shreve and other persons prior to August 8th, 1901, and the making of such sales and offers he denied.

Phillips, Shreve, his wife, Elizabeth, and Ferdinand Stadler were then called, and, against objections, severally testified to such offers made to them by the plaintiff. In the testimony of Caleb E. Shreve it further appeared that he had actually bought upwards of ten thousand of such shares through the plaintiff, and that in the course of the dealing Peter Whitney, already named, had told him, "The doctor holds fifty thousand shares on an option, and I am assisting him in the sale of it."

*d.* When all of the evidence was in, the presiding justice charged the jury. Two parts of the charge only need now be quoted. They are as follows:

* * * "You have also, as bearing upon the question of whether the stock was sold by Dr. Crosby to Mr. Wells, the fact that about that time he was offering stock of this company for sale to other persons, and you have also the receipt * * * and the envelope of August 8th. * * *

"In this case there is testimony to the effect that Dr. Crosby said to Mr. Wells that he had visited the oil fields and that everything was all right. Did he or did he not make that assertion intending that Mr. Wells should infer that he was making these statements of his own knowledge, and did he at that time have such knowledge? 'If he intended to make the assertion as of his own knowledge, and that he had knowledge of the facts, when as a matter of fact he had not, that in itself would be a false statement, from which you would be justified in inferring fraud."

A verdict was rendered in favor of the defendant for the $500 paid, with interest, and judgment was entered thereupon in the Supreme Court. For error alleged in the record and proceedings, a writ of error was sued out of this court.

Bills of exception to the errors complained of in the rulings at the trial and in the charge of the court below were signed

and sealed, and error was duly assigned thereon in this court, unless otherwise noted in the opinion.

For the plaintiff in error, *Clarence H. Cole.*

The points made by counsel for the plaintiff in error sufficiently appear in the numbered paragraphs of the opinion.

*Contra, Eli H. Chandler.*

The opinion of the court (the foregoing statement having been made) was delivered by

GREEN, J.  I. *a.* Counsel for the plaintiff in error first objects to the question addressed to the witness Davis, that it was not proper cross-examination, the gist of the objection being that the question did not relate to matters brought out on the examination-in-chief, but tended to establish the defendant's case substantively by cross-examining the plaintiff's witness, and that this course is not allowed by our practice. See *Donnelly* v. *State* (1857), 2 *Dutcher* 601, 610; *Dennis* v. *Van Voy* (1864), 2 *Vroom* 38, 40, 41. Without casting the slightest doubt upon the value of these cases, we may be permitted to think that they are not now controlling.

(1) It must be borne in mind that Davis was originally examined as a witness in the action of Shreve *v.* Crosby; was produced on the part of Crosby, and was cross-examined on behalf of Crosby's adversary. In order to save time and expense, it was agreed (the same attorneys being employed) that the testimony "might be used" in three other pending actions, one of which is that now under investigation. In this action Davis was the witness of Crosby's adversary, the defendant, Wells, and the question addressed to Davis and the answer given by him are naturally and legitimately to be regarded as part of his examination-in-chief. They would have plainly appeared in that light if they had been taken down in writing in this action.

(2) If, however, it be preferable to regard the question

and answer in their original aspect, then it is to be borne in mind that the examination of Davis was not taken *viva voce* in open court, or under a commission with interrogatories and cross-interrogatories annexed, but by virtue of a notice given agreeably to "An act concerning evidence." *Revision of* 1900; *Pamph. L.* 1900, *pp.* 362, 375. The words in the statute of present importance are:

"Provided that notice in writing of the time and place of such examination and the names of the witnesses to be examined be given to the adverse party, his attorney or solicitor, *that he may be present and put interrogatories, if he shall see fit.*"

A provision of similar import appeared in section 1 of the act of March 17th, 1862 (*Pamph. L., p.* 226); was amended and carried into section 38 of "An act concerning evidence," approved March 27th, 1874, and now, as part of section 45 of the act of 1900, above quoted, affects the practice of taking the testimony of a witness out of this state otherwise than by commission. It accords with the language of the act and of the customary notice (*Bess. L. Prec.* 248), and with the practice of the bar, that the attorney of the adverse party, in questioning the witness, should not be bound by the strict rules of cross-examination, but may put such questions as may legitimately tend to establish his cause of action or defence.

The matter inquired into in the present case was admissible. The question was meant to bring out a fact which would be a link in the chain of proofs tending to maintain the position of the defence. The chain would be this: Knowledge by Davis of the actual productiveness and value of the oil land in question; meeting of Davis and the plaintiff, Crosby, when the latter visited the oil land; the acquiring by the plaintiff of the true facts as to the land and its productiveness, which bore upon the value and profitableness of the stock; representations by the plaintiff to the defendant contrary to known facts; fraudulent character of such representations; propriety of the rescission of the contract based on such repre-

sentations; the consequent failure of consideration of the note sued upon.

I. *b*. The counsel for the plaintiff in error again objects to the question addressed to Davis that the subject-matter was not one for expert testimony. It may be that the matter was not to be settled by expert testimony, if we give to that phrase a strict and scientific meaning. Nevertheless, we incline to the view that it was one for the offer of opinion evidence under another exception to the so-called opinion rule. It is not now needful for us to adopt a perfect and all-embracing definition of the phrase "opinion evidence." There is, for example, one kind of such evidence discussed in *Koccis* v. *State* (1893), 27 *Vroom* 44, 47, and illustrated in *Castner* v. *Sliker* (1869), 4 *Id.* 507 (at *p.* 509). But with· this we have now no concern. For present purposes, opinion evidence is that which is given by a person of ordinary capacity, who has, by opportunity for practice, acquired a special knowledge which is outside of the limits of common observation, and which may be of value in elucidating a matter under consideration. The experiential qualifications of the witness—including his opportunity to observe the very thing under inquiry—being first shown, his special knowledge may be imparted in aid of the jurors at the trial, under questions in ordinary form. The definition above given is supported by *Wigm. Evid.*, §§ 556, 558, 1917 (4), 1918, 1925; 17 *Cycl. L. & Pro.* 37, 41, 123; *Best Ev.* (10th *Eng. ed.*), § 513; *Tayl. Ev.* (9th *Am. & Eng. ed.*), §§ 1416, 1420; *New Jersey Traction Co.* v. *Brabban* (1895), 28 *Vroom* 691, 694; *Wheeler & Wilson Co.* v. *Buckhout* (1897), 32 *Id.* 102, 105; *Elvins* v. *Delaware and Atlantic Telegraph and Telephone Co.* (1899), 34 *Id.* 243, 247; *State* v. *Arthur* (1904), 41 *Id.* 425, 427; *State* v. *Laster* (1904), 42 *Id.* 586, 588. The inquiry preliminary to the giving of opinion evidence is indicated in *Wigm. Ev.*, §§ 560, 1928; 17 *Cycl. L. & Pro.* 123; *Tayl. Ev.* (9th ed.), § 1417; *New Jersey Traction Co.* v. *Brabban, supra; Wheeler & Wilson Co.* v. *Buckhout, supra* (at *p.* 104); *State* v. *Arthur, supra.*

In harmony with the definition and the preliminary inquiry, the following cases illustrate our use of the kind of opinion evidence now under our notice. In *Schenck* v. *Mercer County Mutual Insurance Co.* (1854), *1 Zab.* 447, 451, an experienced and practical fireman, who had seen the building in question, was permitted to testify that certain alterations therein did not increase the risk of fire. In *Read* v. *Barker* (1863), 1 *Vroom* 378, 379; *affirmed, 3 Id.* 477, it was held that millers and millwrights, as practical men, the extent of their knowledge being first shown, might testify as to the quantity of grain a certain mill could grind, and the value of the waterpower for milling. In *Wheeler & Wilson Co.* v. *Buckhout* (1897), 31 *Id.* 102, 104, a witness whose calling had required him, during twenty-five years, to examine and compare signatures with a view to determining their genuineness, was allowed to testify, by comparison with a signature made in his presence, as to the genuineness, in his opinion, of a disputed signature, although he had not made a special study of chirography.

Applying the definition and the illustrative decisions to the case in hand, we perceive that Davis possessed, to the satisfaction of the trial court, the necessary experiential qualifications; that neither could the actual productiveness and value of the oil land in question be effectively described to the jurors, nor could they exercise powers of comparison and judgment respecting this and other lands; and that such productiveness and value, affecting materially the value of the oil company's shares, and the knowledge thereof were, as already noted, links in the chain of proof tending to support the position of the defence.

. We conclude, therefore, that the question addressed to Davis was not objectionable from either of the standpoints of the plaintiff in error.

II. The second contention of the plaintiff in error is that a verdict should have been directed for him in the court below, alleging two reasons therefor.

In our country, a verdict may be directed for a plaintiff as well as for a defendant. See *Commissioners of Marion*

*County* v. *Clark* (1876), 94 *U. S.* 278, 284; *Leach* v. *Burr* (1902), 188 *Id.* 510, 513; *affirming* 17 *D. C. App.* 128, 135, 140; *Baldwin* v. *Shannon* (1881), 14 *Vroom* 596, 603; *Whittaker, Receiver,* v. *Miller* (1899), 34 *Id.* 587, 588; *Loper* v. *Somers* (1904), 42 *Id.* 657, 662. And the question to be propounded is whether there be any reason why the verdict should not be so directed. See *Wigm. Evid.,* § 2495 (2). The principles with which the answer must accord have been stated in our reports in both positive and negative form. *Firstly,* the trial court should direct a verdict, when any number of verdicts, if found otherwise than as ordered, would be set aside as without sufficient evidence to support them (*Hartman* v. *Alden, Executrix* (1870), 5 *Vroom* 518, 522; *Baldwin* v. *Shannon* (1881), 14 *Id.* 596, 602, 603; *Crue* v. *Caldwell* (1889), 23 *Id.* 215, 218; *McCormack* v. *Standard Oil Co.* (1897), 31 *Id.* 243, 245); or when the testimony in the case will not support any other verdict as in *Loper* v. *Somers,* 42 *Id.* 657, 661. *Secondly,* the trial court cannot direct a verdict when any material facts which the parties have been permitted to introduce are in dispute. See *Delaware, Lackawanna and Western Railroad Co.* v. *Shelton* (1893), 26 *Id.* 342, 345; *Baumann* v. *H. A. Packet Co.* (1901), 38 *Id.* 250, 254.

The plaintiff in error thinks that, these tests being applied, his motion should have been allowed, alleging that there was no evidence of fraud in him—thus cutting away the right of rescission—and that any offer to rescind was incomplete—thus cutting away an actual rescission. He evidently relies upon *Byard* v. *Holmes* (1868), 4 *Vroom* 119, 126, which holds that the injured party must not only show a right to rescind, but that the contract has in fact been rescinded. Without doubting this case, we may remark that, from the difference in the underlying facts, it does not help the plaintiff in error.

On the point of fraud, affecting the right to rescind, it may be remarked that fraud must indeed be proved, not presumed; nevertheless, it may be inferred from other facts. See *Best Ev.* (10th *Eng. ed.*), § 349; *Van Pelt* v. *Veghte*

(1834), 2 *Gr.* 207, 212, 213; *Cole* v. *Taylor* (1849), 2 *Zab.* 59, 61; *Cowen* v. *Bloomberg* (1903), 40 *Vroom* 462, 464. Further, it is to be remembered that fraud in representations of fact may be either in the knowledge of their falsity, or without knowledge of their truth or falsity, in coupling the representations with an express or implied affirmation of personal knowledge of their truth. See *Cowley* v. *Smythe* (1884), 17 *Id.* 380, 388, 391; *State, Cummings, pros.,* v. *Cass* (1889), 23 *Id.* 77, 83, 85. There was, in the case in hand, evidence so far tending to show representations by the plaintiff to the defendant, respecting the oil land and the oil company's shares, which either were not true and he knew it, or were not true and he was ignorant of it, yet affirmed their truth to his own knowledge, that such evidence, in either aspect, was proper to be submitted to the jury, under instructions from the court. Proper instructions from the trial court appear in the second excerpt from the charge set forth in the foregoing statement. The disposal of the case on the point of fraud was, under the evidence, in accord with *Miller* ads. *Pancoast* (1861), 5 *Dutcher* 250, 254; *Farrel* v. *Colwell* (1862), 1 *Vroom* 123, 128; *Reford* v. *Cramer* (1863), *Id.* 250, 254; *Cowley* v. *Smythe* (1884), 17 *Id.* 380, 393; *Conlan* v. *Roemer* (1889), 23 *Id.* 53, 59; *State, Cummings, pros.,* v. *Cass* (1889), *Id.* 77, 83, 85, and *Eibel* v. *Von Fell* (1899), 34 *Id.* 3, 4. Such cases as *Wise* v. *Fuller* (1878), 2 *Stew. Eq.* 257, 262, and *Hallinger* v. *Zimmerman* (1899), 14 *Dick. Ch. Rep.* 644, 645, are essentially different in the facts and in the application of principles.

On the point of actual rescission, it must be borne in mind that a vendee who has a right to rescind must, if property has been delivered to him, either (*a*) return it to the vendor, or (*b*) offer to return it, or (*c*) give notice of its rescission. See *Smalley* v. *Hendrickson* (1862), 5 *Dutcher* 371, 373; *Starr* v. *Torrey* (1849), 2 *Zab.* 190, 196; *Pidcock* v. *Swift* (1893), 6 *Dick. Ch. Rep.* 405, 408; *affirmed,* 8 *Id.* 238; *Henninger* v. *Heald* (1894), 7 *Id.* 431, 437; *affirmed,* 8 *Id.* 694. One or the other of the foregoing things must the

vendee do before suit brought. See *Byard* v. *Holmes* (1868), 4 *Vroom* 119, 127; *Hanrahan* v. *National Building Loan and Protective Association* (1901), 37 *Id.* 80, 86. There was, in this case, evidence serving to show that the defendant, in writing and orally, offered to return the oil shares and rescinded the contract of sale before the litigation was begun; and that he went to a place of meeting with the plaintiff and his attorney, having in his pocket the certificate of stock and an assignment thereof, ready for delivery; but he did not deliver the papers, or perhaps even show them, because they were rejected in advance. This evidence, also, was proper to be submitted to the jury, under instructions from the court. That the act of rescission may have fallen short of a complete return would not, under the circumstances of the case, destroy the effect of the notice and offer to return. The defendant was not required to do more than under the circumstances he was permitted by the plaintiff to do. See the reasoning in *Guild, Executor,* v. *Parker, Receiver* (1881), 14 *Vroom* 430, 437; *Henninger* v. *Heald* (1894), 7 *Dick. Ch. Rep.* 431, 437, and *Wilson* v. *Borden* (1902), 39 *Vroom* 627, 630. It was by reasoning thus upon the effect of the conduct of an adversary that in *Thorne* v. *Mosher* (1869), 5 *C. E. Gr.* 257, 262, 263, it was held that a defendant was excused from a completed tender, when the complainant had announced beforehand a determination not to receive the thing offered. That the act of rescission may have been coupled with a demand of repayment of the money paid on account of the shares would not nullify the act. Upon a rescission, the recovery of this money was the very thing to which the defendant was entitled. See *Bayard* v. *Holmes* (1868), 33 *N. J. Law* 119, 124; *Hanrahan* v. *National Building Loan and Protective Association* (1901), 37 *Vroom* 80, 85, and *Hubbard* v. *International Merch. Agency* (1904), 2 *Robb.* 434, 436.

We think that, as to both the right and the fact of rescission, the trial judge could not have done otherwise than submit the evidence to the jury, and the contention to the contrary must fail.

III. *a.* The counsel for the plaintiff in error next objects to the questioning of the plaintiff concerning his dealings with Phillips, the two Shreves and Stadler (afterwards witnesses), as not being cross-examination. The objection was that nothing had been disclosed on the direct examination to show any sales by the plaintiff of shares in the Ohio Oil Company to any person other than the defendant, and the legal argument brought forward to support the objection is that the cross-examination of a party, like any other witness, must be limited to the subjects opened by the examination-in-chief. See *Donnelly* v. *State* (1857), 2 *Dutcher* 463, 494; *State* v. *Sprague* (1900), 35 *Vroom* 419, 425; also, *State* v. *Zdanowicz* (1903), 40 *Id.* 619, 624, in which the matter is held to be still an open one, touching the questioning of a defendant charged with crime.

The printed case shows bills of exception, signed and sealed, upon refusal to exclude questions addressed to the plaintiff concerning sales of shares or offers to sell shares to Arvine H. Phillips and Caleb E. Shreve, but none as to questions concerning sales to persons other than they. We shall not, therefore, consider the legality of any such questions except those embraced in the bills. See *Davis* v. *Littel* (1900), 35 *Vroom* 595, 596; *Conrad* v. *Brocker* (1904), 41 *Id.* 823; also, *Ward* v. *Ward* (1850), 2 *Zab.* 699, 710, 711.

Assuming now that the plaintiff in error has brought forward a legal principle which is of force in the trial of a civil action (whatever may be the case in the trial of an indictment), we do not see that the plaintiff has been aggrieved by any disregard of it. We may not forget that, in theory, one of the objects of cross-examination is to bring out facts (suppressed or undeveloped in the examination-in-chief) which diminish the trustworthiness or impeach the credit of the witness. See *Wigm. Evid.*, § 1368 (1); *Derrickson* v. *Quimby* (1881), 14 *Vroom* 373, 376.

In the testimony of the plaintiff, when interrogated by his own counsel, he not only gave answers which served to show that he had not sold any of the Ohio oil shares to the defend-

ant, but he went further—he gave answers which tended to show that, at the time of the trial (September, 1904), he owned all of such shares which he had bought before August 8th, 1901, the date of the alleged transaction with the defendant; and so, in effect, the plaintiff denied that he had ever made sale of such shares to any person whomsoever.

We are not constrained to justify the cross-questioning of the plaintiff by the principle of judicial discretion, although we might. point to .Disque v. State (1887), 20 Vroom 249, 250, as an instance of the approved exercise of such discretion. In the present case it is evident that inquiry about the sales of shares before August 8th, 1901, to other persons, such as Phillips and C. E. Shreve, would have a tendency to diminish the force of the plaintiff's testimony or impeach his credit, and therefore it was a proper and legitimate inquiry under the rules governing cross-examination.

III. b. The counsel for the plaintiff in error objects, in the same connection, that it was error to permit the examination of Phillips, the two Shreves and Stadler (witnesses sworn for the defendant in rebuttal), about their dealings with the plaintiff, because such testimony was irrelevant or was a part of the defendant's principal case.

There are no assignments of error covering the admission of testimony given by Caleb E. Shreve or Ferdinand Stadler. In order to the review of an alleged irregularity in the trial court, error should be assigned therefor, and the ground of error should be definitely pointed out. See 1 Arch. Pr. (2d Eng. ed.) *250, *272; Palm. Pr. 128; State, Hoey, pros., v. Lewis, Collector (1877), 10 Vroom 501, 507; Lutlopp v. Heckman (1903), 70 Id. 272, 273. Hence, under the circumstances of this case, we shall not look at any irregularity which may have occurred in the giving of the testimony of the two witnesses last above named.

(1) Whether the matter of defence was such as might be given in evidence under a plea of the general issue, or was proper to enter into a special plea or notice of special matter, is not before us for consideration. The question is whether

the evidence of dealings between the witnesses, Arvine H. Phillips and Elizabeth T. Shreve, and the plaintiff was relevant.

An evidentiary fact, whether simple or complex, is relevant when it has probative value in support of a material proposition of one of the parties. See *Wigm. Evid.,* §§ 2 (1), 12, 29. Evidence is also said to be relevant when it is directed and confined to the matters in dispute between the parties, as shown by the pleadings. See *Best Ev.* (*10th Eng. ed.*) 228; *Marsh* v. *Newark H. & V. Mach. Co.* (1894), 28 *Vroom* 36, 42.

The main proposition of the defendant was this: There can be no recovery upon the note in suit, because of the total failure of consideration. But underlying this were these further propositions: The consideration was an executed contract of sale of oil shares; this contract of sale was procured by fraudulent representations of fact; the contract was rescinded before suit. The defendant was interested in maintaining these propositions. The plaintiff met them with the counter-propositions following: There had been no fraud in me, and there had been no sale by me. The second counter-proposition he endeavored to support by evidence going to show that before the trial he had never sold any such shares to any person.

To show, then, by the testimony of others, that the plaintiff had had dealings with them in respect of such oil shares within the time mentioned was relevant in that it tended to discredit the testimony of the plaintiff with respect to his recollection and his truthfulness (*Wigm. Evid.,* §§ 1004, 1005), and in that it weakened, in the same degree, his denial of a sale by himself to the defendant. Under this principle— which is, in brief, that of the impeachment of a witness by contradiction from others—the testimony was, indirectly if not directly, of value in support of a material proposition of the defendant. See the views of this court in *Lambeck* v. *Stiefel* (1904), 42 *Vroom* 320, 321, upon the improper rejection of a letter written by the plaintiff to a third person,

and containing statements inconsistent with his claim in the action *sub judice.*

(2) Whether the testimony of the witnesses, Phillips and E. T. Shreve, in rebuttal, should have been given as a part of the defendant's principal case is of no present consequence inasmuch as it would appear that the door was opened for its admission in contradiction of the plaintiff in error by evidence given by the plaintiff himself in rebuttal of the defendant's case.

Assuming, however, that the offer of the testimony was ill-timed, we may nevertheless dispose of the objection to receiving it, on the ground of judicial discretion. The conduct of the trial and the general course of the examination of the witnesses rest within the sound discretion of the trial judge, and the exercise of such discretion is not reviewable on writ of error. See *State* v. *Fox* (1856), 1 *Dutcher* 566, 602; *Trade Insurance Co.* v. *Barracliff* (1883), 16 *Vroom* 543, 545; *Bodee* v. *State* (1894), 28 *Id.* 140, 142; *Hustis* v. *Banister Company* (1899), 34 *Id.* 465, 467; *Foley* v. *Brunswick Traction Co.* (1903), 40 *Id.* 481, 482, and *Luckenbach* v. *Sciple* (1905), 43 *Id.* 476, 478.

The above objections taken to the testimony of Mr. Phillips and Mrs. Shreve cannot avail the plaintiff.

IV. The next objection raised by the plaintiff in error is that if it were true that he had offered oil shares for sale to persons other than the defendant, it was not evidential that he had entered into a contract of sale with the defendant.

In some other aspects we have already considered the propriety of the testimony drawn from the plaintiff on cross-examination, and from the witnesses Phillips and E T. Shreve, touching dealings in these oil shares between the plaintiff and third persons. So far, then, as this objection questions the admissibility of the offers to sell on the ground that the proof goes merely to contradict the plaintiff on an immaterial point, we need to do nothing more than repeat what has already been said. The plaintiff, however, urges, further, as to the evidence of the offers of such shares to third persons, that "it is like an effort to prove one crime by show-

.ing the commission of another, and such efforts have always ·been declared illegal." We are therefore constrained to inquire whether such evidence, even if relevant, ought to have been excluded under some one of the rules of auxiliary policy, such as those relating to the multiplication or confusion of issues or to unfair prejudice. See *Wigm. Evid.*, §§ 42, 443, 1171, 1863.

At least as long ago as *Clark* v. *State* (1885), 18 *Vroom* 556, 558, and as recently as the case of *State* v. *Hummer, ante p.* 714, this court has said that, for the purpose of showing a defendant likely to commit a crime charged, it is not proper to prove that he committed other crimes, although of a like nature. We have no idea of gainsaying that which these and other cases have held or assumed; nevertheless, we are of opinion that it is not this rule, but another, governing the admission of evidence, to which effect is to be given in the present case.

Fraud is complex, involving a mental state, as well as an open act. The mental state, in turn, has usually at least three elements—knowledge, intent and design. Knowledge is the receiving of a mental impression—the state of being aware (*Wigm. Evid.*, §§ 244, 245, 300) ; intent is the state of mind which precedes or accompanies an act—volition (*Id.*, §§ 242, 300), and design is the conceived plan or system by which the intent is to be carried out or attained (*Id.*, §§ 237, 300). As this mental state can in itself be neither seen nor handled, the existence of its elements must be shown by acts of the person charged or occurrences in which he has borne some part. Furthermore, as the logical process by which knowledge, intent or design may be inferred from acts or occurrences is inductive, we increase the probability of safe and sane inference by multiplying instances of the act or occurrence. Hence it becomes a sound rule, both in logic and in law, that evidence of acts similar to the one immediately under investigation may be offered for the purpose of showing the knowledge, intent or design which are elements of the fraudulent conduct. See *Wigm. Evid.*, §§ 300, 305, 320, 340,

344; also *Greenl. Evid.* (*Lewis' ed.*), § 53, and *Tayl. Ev.* (*9th Am. & Eng. ed.*), §§ 327, 338, 349.

In the oft-quoted case of *State* v. *Raymond* (1891), 24 *Vroom* 260, 264, 265, the evidence offered was declared irrelevant, and Justice Dixon spoke on the matter thus: "The general rule on this subject is that upon the trial of a person for one crime evidence that he has been guilty of other crimes is irrelevant, but there are several exceptions to the rule. * * * Exception is made, also, when the acts charged * * * are criminal only when performed with a certain intent or with knowledge of a certain fact; in such case other acts of the defendant, although criminal, may be adduced to prove that he had such specific intent or knowledge."

If this statement of the exception to the rule be thought a *dictum,* it was not a *dictum* which ruled the admissibility of the business card and newspaper advertisement in *Mayer* v. *State* (1899), 35 *Vroom* 323, 327, 328. Some light, also, is thrown upon the principle under consideration by the reasoning in the cases of *State* v. *Snover* (1900), 36 *Id.* 289, 293, and *Bullock* v. *State* (1900), *Id.* 557, 575. A difference of notion appears in the books as to whether the principle is a specification under the general rule as to the relevancy of proofs, or is an exception under the rule excluding evidence on the ground of unfair prejudice. This need not, however, delay us, as we are now concerned only with the existence of the principle, not with its place in a systematic scheme.

All of the authorities quoted above have reference to evidence in criminal cases, but the principle has a place in civil cases as well. Professor Wigmore (1 *Wigm. Evid.,* § 370) says: "The peculiarity of the question involved is merely whether, and under what conditions, other similar acts are receivable to show knowledge, intent or design as to the act charged. This question is of much less frequent occurrence in civil than in criminal cases merely because the issues of intent and the like are less commonly open in civil cases; but whenever knowledge, intent or design is relevant in a civil case, the principles are equally applicable."

An instructive civil case is that of *Blake* v. *Albion Life Assurance Society* (1878), *L. R.,* 4 *C. P. Div.* 94. This was an action against the society to recover a sum of money obtained by them from the plaintiff, through a fraud of an agent, committed with their knowledge and for their benefit, and it was held that evidence of similar frauds committed on persons other than the plaintiff, by the same agent and in the same manner, was admissible on the part of the plaintiff. Justice Lindley (at *p.* 107) remarked: "The question, when closely examined, appears to be whether, by enlarging the view, light can be thrown on the true nature of the transaction, which, taken by itself, may be innocent or fraudulent. I think this may be done. The answer to the objection that evidence of frauds on other persons cannot be admitted is that this transaction is one of a class; that there are features in common, the features being the false pretence and a knowledge of that false pretence on the part of the defendant, and the moment that is shown the plaintiff's case is established." Lord Coleridge (at *p.* 111) said: "For the reasons already stated by my brothers, Lindley and Grove, I think that the case does not fall within the rule excluding a *res inter alios acta;* the facts given in evidence were such in one sense, but they were not tendered for the purpose of prejudice; they were tendered to make out the necessary links in the chain of the plaintiff's proof in this action."

The principle under consideration is by no means unknown among us in civil cases. By it, in *Wilkinson* v. *Dodd* (1886), 15 *Stew. Eq.* 234, 236, 248, 250, there was justified the admission of proof of prior illegal acts of management, as tending to show either a knowledge of wrong-doing in a later act or an intent to commit a wrong in such act, from which pecuniary loss resulted; and, by like reasoning, in *Continental Match Co.* v. *Swett* (1898), 32 *Vroom* 457, 458, there was sanctioned the admission of proof of work done for third persons by the plaintiff as serving to show knowledge or skill in the line of like work in which he had been employed by the defendant.

Coming now to the application of the principle to the case

in hand, we recollect that the position of the defence called
for the proof, *inter alia,* of the acquiring by the plaintiff of
the facts as to the oil land and its productiveness, which bore
upon the value and profitableness of the stock; of the repre-
sentations by the plaintiff to the defendant, contrary to the
known facts, and of the fraudulent character of such repre-
sentations. Resolving the fraud into its element of knowl-
edge, intent and design, we perceive that the position of the
defence further called for proof of the perception by the
plaintiff of the bearing of the truth as to the value and profit-
ableness of the oil stock upon his own personal interests and
prospects; of the wish and purpose of the plaintiff to mini-
mize any ill effects, without regard to the fairness of the
means, and his conceived plan or system of carrying out the
intent by selling some or all of the shares to one who could be
misled as to the true state of affairs. If, then, we should
insist that the defendant's proofs be limited to the plaintiff's
dealings with him and the plaintiff's offer of the oil shares to
him, we might (to paraphrase the words of Justice Lindley)
leave the jurors in a state of incertitude as to the innocent or
fraudulent nature of the transaction, thus taken by itself;
but if, multiplying the instances and enlarging the view, we
admit proof of the offers to persons other than the defendant
—offers having features in common with the offer to the de-
fendant—we throw light upon the true nature of the dealings
between the parties. Thus it becomes apparent that the evi-
dence of the offers of the oil shares to A. H. Phillips and E.
T. Shreve, accompanied by words commendatory of the shares,
should not have been excluded as tending to the unfair preju-
dice of the plaintiff, or excluded as tending only to show the
likelihood of his perpetrating one particular fraud because he
had perpetrated some other frauds, but was properly admitted
as serving to give character to the knowledge, intent or design
of the plaintiff in entering, shortly afterward, into a contract
of sale of like shares with the defendant, and thus logically
to establish particular elements of the fraudulent representa-
tions which were links in the chain of proofs of the defence.

V. The last objection put forth in behalf of the plaintiff in error is that the trial judge, in and by his charge, assumed that certain facts were conclusively established, and thus withdrew them from the consideration of the jury. This objection did not appear in the printed brief of counsel, and was not very clearly stated on the hearing, but it seems to have been directed to the form of expression, "You have also * * * the fact," &c., contained in the excerpt from the charge firstly set forth in the statement hereto prefixed, to which part of the charge the plaintiff excepted.

It is undoubtedly true that a trial judge may not assume as a fact that which is disputed, and, by his charge or otherwise, withdraw any such matter from the consideration of the jurors, thus affecting their determination. See *Betts* v. *Francis* (1862), 1 *Vroom* 153, 154, 156, 157; *Broadway Insurance Co.* v. *Doying* (1893), 26 *Id.* 569, 572; *Marsh* v. *Newark H. & V. Mach. Co.* (1894), 28 *Id.* 36, 39.

Looking, however, as we ought to do (*Sullivan* v. *North Hudson County Railroad Co.* (1889), 22 *Vroom* 518, 542), at all the parts of the charge which bore upon the alleged sale of the oil shares by the plaintiff to the defendant, we do not think that the jury could have been misled to the injury of the plaintiff. The charge being fairly interpreted, the trial judge said to the jurors—not, here you have a fact to be assumed as a thing established, because I so instruct you—but, here you have a matter which has been put in evidence as an element for your use in forming your own conclusions and making up your verdict. This view accords with that taken by the Supreme Court of the charge complained of in *Smith* v. *State* (1851), 3 *Zab.* 130, 139.

The last objection of the plaintiff in error falls, as did the others, and the result is that the judgment of the Supreme Court must be in all things affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, FORT, GARRETSON, HENDRICKSON, PITNEY, REED, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL. 14.

*For reversal*—None.