PAUL S. HIGBEE, PLAINTIFF-RESPONDENT, v. ATLANTIC CITY AND SHORE RAILROAD COMPANY, A CORPORATION, AND JOHN OSTROFF, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS-APPELLANTS.

Submitted January 19, 1943—Decided June 17, 1943.

Before Justices BODINE and HEHER.

For the appellants, *Bourgeois & Harris.*

For the respondent, *Thompson & Lloyd (John Lloyd, Jr.,* of counsel).

The opinion of the court was delivered by

HEHER, J. This is an action in tort for negligence. The District Court Judge, sitting without a jury, awarded judgment to plaintiff for the damages sustained; and the question posed by defendants, grounded upon the denial of their motions for a nonsuit and a "directed verdict," is whether the evidence is conclusive of plaintiff's contributory negligence. The inquiry must be resolved in the negative.

The agreed state of the case reveals evidence tending to show the following matters of fact: On June 5th, 1942, at about 9 A. M., a trolley car of the defendant corporation, in charge of the co-defendant, Ostroff, and an automobile owned and operated by plaintiff were both proceeding in an easterly direction along Atlantic Avenue, in the City of Atlantic City, the motor car a distance of approximately 15 feet directly behind the trolley car, when the latter vehicle came to a sudden and unexpected halt at a place not established as a "regular stop" and the automobile collided with its rear end, causing the damage for which the award was made. Other vehicles moving in the same direction confined plaintiff's automobile to the trolley tracks. The trolley car stopped at the Sovereign Avenue intersection, and plaintiff brought his automobile to a standstill behind it. The vehicles were again put in motion in the same relative positions; and, as they approached the Montpelier Avenue intersection, the trolley car "slowed down but did not stop," and plaintiff did likewise. "As the trolley car reached the established stop" at the intersection, "it started to increase speed" and proceeded over the intersection at the rate of 15 or 16 miles per hour, the plaintiff doing the same. Plaintiff at this point "turned his head to the right to see if he could enter the next lane of traffic on the right and pass the trolley car," and "turned his automobile slightly to the right." When he "again looked forward the trolley car had come almost to a complete stop," and the motor vehicle "was practically on it;" and although plaintiff "threw out his clutch and applied his brakes, the collision with the rear end of the trolley car followed immediately." The latter vehicle "had stopped with its rear end 18 feet east of the easterly end of the safety zone,

or trolley stop, located west of the west side of Montpelier Avenue, and 10 inches east of the west curbline of" that avenue. The safety zone was delineated by white lines on the street surface. The front of the trolley car was then "east of the easterly cross-walk of Montpelier Avenue, and the car itself was stopped across this cross-walk." Plaintiff "saw no signal given of the * * * motorman's intention to stop." Evidence was adduced, as binding on Ostroff only, that, after the collision, he stated to plaintiff that he stopped "because he saw a fare running for the car and had to pick it up." An eye-witness testified that the trolley car "slowed down" as it neared the intersection, and then "picked up speed;" that it "stopped suddenly with its front end beyond the east cross-walk of Montpelier Avenue;" and that "from the time the trolley car started to pick up speed until it came to a stop, it traveled about a trolley length." The trolley car was 46 feet in length.

We entertain the view that in these circumstances the conduct of plaintiff, appraised by the standard of reasonable care, was at the least subject to variant inferences, and therefore raised an issue of fact, the resolution of which is final and conclusive by force of *R. S.* 2:32-202.

Under *R. S.* 39:4-44, a street railway company is empowered to establish certain street intersections or other points as "regular stops," and in such event "the near side of the intersection or crossing shall be designated as the established stop," unless "the convenience or safety of the public will be better served" at "the far side;" and *section* 39:4-45 provides that the cars of such a transport "shall not be allowed to obstruct the crosswalks of a street." It is undisputed that the near side of the particular intersection was an "established stop" (this is proved by the photographs showing the safety zone) ; and plaintiff was warranted in assuming, until he discovered that it was contrary to the fact, that the operator of the trolley car would observe the legislative directions and otherwise exercise reasonable care in the use of the street. The legislative prescription establishes a standard of conduct in the management of trolley cars upon the public highways. *Niles* v. *Phillips Express Co.*, 118

*N. J. L.* 455; *Miller* v. *Public Service Co-ordinated Transport,* 111 *Id.* 339; *Simpson* v. *Snellenburg,* 96 *Id.* 518; *Paulsen* v. *Klinge,* 92 *Id.* 99; *Winch* v. *Johnson,* 92 *Id.* 219; *Jackson* v. *Geiger,* 100 *Id.* 330. The manifest purpose of the provisions of the Traffic Act is the avoidance of collisions and other hazards incident to the movement of vehicles upon the public streets and highways.

Considering the fact that the trolley car had passed the established stop, the distance intervening between the two vehicles, and the statutory traffic regulations adverted to, can it fairly be said that plaintiff, in seeking a place in the parallel line of traffic to the right, indisputably did that which men of ordinary prudence would not have done under like circumstances? We think not. Whether defendant's negligence constituted the sole proximate cause of the collision was a question peculiarly within the province of the trier of the facts. That the automobile was moving in close proximity to the trolley car is not negligence *per se.* In this class of cases, contributory negligence is almost invariably an issue for the determination of the jury. *Simpson* v. *Snellenburg, supra; Jackson* v. *Geiger, supra; Wallach* v. *Lightening Electric Co.,* 10 *N. J. Mis. R.* 954.

Judgment affirmed, with costs.