43 N.J. Super. 420 (1957)
129 A.2d 43
GEORGE A. CONKLIN, ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF FLORENCE N. CONKLIN, DECEASED, PLAINTIFF-APPELLANT,
v.
MIELE'S MOTOR TRANSPORTATION, INC., AND HENRY TALIAFERRO, DEFENDANTS-RESPONDENTS. MARION D. IRSIG, AN INFANT, BY HER GUARDIAN AD LITEM, CHARLES IRSIG, AND CHARLES IRSIG AND REGINA IRSIG, EACH INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
MIELE'S MOTOR TRANSPORTATION, INC., AND HENRY TALIAFERRO, DEFENDANTS-RESPONDENTS. AMY WILSON, GENERAL ADMINISTRATRIX, AND AMY WILSON, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF RICHARD R. WILSON, DECEASED, PLAINTIFF-APPELLANT,
v.
MIELE'S MOTOR TRANSPORTATION, INC., AND HENRY TALIAFERRO, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 21, 1957.
Decided February 5, 1957.
*422 Mr. John VR. Strong argued the cause for appellant Conklin (Messrs. Strong & Strong, attorneys).
Mr. John A. Lynch argued the cause for appellants Irsig (Mr. Meyer J. Cohn, attorney).
Mr. John C. Stockel argued the cause for appellant Wilson.
Mr. John J. Rafferty argued the cause for respondents (Messrs. Rafferty & Blacher, attorneys).
Before Judges CLAPP, JAYNE and FRANCIS.
The opinion of the court was delivered by JAYNE, J.A.D.
The unfortunate disaster to which this litigation relates occurred at about 1:30 P.M. on June 17, 1954 in North Brunswick Township, Middlesex County. It *423 was indubitably occasioned by negligence. Its injurious consequences were pathetic. The occurrence was a violent collision between two motor vehicles, one of which was occupied by teen-agers.
It was a bright and sunny day of unimpaired visibility. Milton Phillips, Jr., 19 years of age, had been accorded the use of his father's Ford passenger car. His companions in the vehicle were Marion Irsig, 15 years old, Richard Wilson, 16 years old, and Florence Conklin, 15 years of age. The young people, all in the gleeful season of life, departed from New Brunswick and were proceeding easterly on a public road known as Adams Lane in North Brunswick Township at its intersection with State Highway Route No. 130. At that locality Route 130 is a level, straight, concrete highway consisting of two lanes dedicated to northbound and two lanes to southbound vehicular traffic, with a grass-covered safety island of 15 feet in width separating the northbound and southbound lanes. There is an open margin in the island at the intersection to accommodate the passage of east and westbound vehicles on Adams Lane in crossing the state highway.
Coincidentally there was approaching the described intersection in a northerly direction on the east lane of the highway a tractor-trailer motor truck laden with 31,000 pounds of steel billets. The total weight of the tractor, trailer, and cargo was 58,000 pounds. The passenger car did not fully complete the crossing of the highway ahead of the heavily laden truck, which collided with the right side of the passenger vehicle at a point in the east lane of the northbound division of the highway.
The Conklin girl was instantly killed. The Wilson boy sustained injuries from which he died about one month later. The Irsig girl was very severely injured but survives. Phillips, Jr., seems not to have been acutely injured.
The prosecution of three actions for the recovery of compensatory damages ensued. The defendants designated in each were Milton Phillips, Sr., the owner of the Ford passenger car, Milton Phillips, Jr., its driver, Miele's Motor Transportation, *424 Inc., the owner of the tractor-trailer, and its servant, the operator, Henry Taliaferro. In one action the plaintiff is George A. Conklin, administrator ad prosequendum of the estate of Florence E. Conklin, deceased. In another Marion Irsig, an infant, and her parents, Charles and Regina Irsig, are the plaintiffs, and the third is prosecuted by Amy Wilson in her representative capacities as the general administratrix and administratrix ad prosequendum of the estate of the decedent Richard R. Wilson.
The actions were unitedly tried before the late Judge Smalley and a jury in the Law Division, Middlesex County. Judge Smalley exonerated the defendant Milton Phillips, Sr., from liability. The jury rejected the counterclaim of Taliaferro against Phillips, Jr., by a vote of 10 to 2, and returned unanimous verdicts against all of the defendants other than Phillips, Sr., in favor of the plaintiffs with the following awards respectively:

 To administrator ad prosequendum of Conklin ..................... $17,500
 To Marion Irsig ................................................. 35,000
 To Charles and Regina Irsig, parents ............................ 5,000
 To administratrix ad prosequendum of Wilson ..................... 20,000
 To general administratrix of Wilson ............................. 5,000

Most unfortunately, the judge before whom the trial was conducted died. Judge Ewart heard the motion for a new trial, and upon a studious review of the stenographic transcription of the testimony resolved that the verdicts in favor of the plaintiffs against Miele's Motor Transportation, Inc., and Henry Taliaferro were without any evidential support whatever in that there was no proof of the alleged negligence of Taliaferro and thus no culpability to be imputed to his master. His order nullified the judgments rendered against those defendants and directed a new trial of the alleged causes of action against them and to embrace all issues.
We are requested by the present appeal to determine the propriety of the order. In so doing, it is noticed that the trial judge in denying the motion for a judgment of dismissal of the alleged causes of action against these defendants *425 expressed the conclusion that in his conception of the adoptable inferences derivable from the existing state of the evidence, factual questions for the solution of the jury were projected.
Judge Ewart, we conjecture, would undoubtedly acknowledge that he would have been aided in the decision of the motion by superior advantages had he personally supervised the trial. He, in a situation in this instance, not unidentical to ours, was obliged to confine his impressions solely to the interpretations and inferential deductions to be harvested from the recorded testimony.
Another precursory observation is that the only testimony concerning the circumstances immediately amid which the mishap occurred came from the defendant Taliaferro. Any notion, however, that his testimony should have been regarded as conclusive of the actual factual occurrences was erroneous. Ferdinand v. Agricultural Ins. Co., 22 N.J. 482 (1956). The lack of informational testimony from disinterested eye-witnesses therefore necessitated in the determination of the case an increased consideration of and dependency upon the accompanying and surrounding circumstances of which there was evidence. As in all such cases a determination of the facts logically precedes a determination of the alleged causative negligence.
The conclusion that a vehicular collision at a street or highway intersection would not have occurred if either driver had exercised reasonable care and circumspection is not necessarily illusory. Vide, Olenick v. Standard Oil Co. of New Jersey, 8 N.J. Misc. 744 (Sup. Ct. 1930), affirmed 108 N.J.L. 201 (E. & A. 1931); Ellis v. Dowd, 128 N.J.L. 607, 609 (Sup. Ct. 1942). The negligence of the drivers may be concurrent and cooperative in causing the mishap.
The hypothetical person of reasonable vigilance, caution, and prudence envisages the obvious situations of danger and acts conformably notwithstanding the rash conduct of another. Some motorists think the thrill of carelessness is worth wagering against life expectancy. Some soon learn the odds, some never do, all learn too late that pecuniary damages do not restore life and limb.
*426 Certainly in the present case there was abundant evidence of the failure of Phillips, the driver of the passenger car, to exercise reasonable care. However, the jury had before it for determination the further question whether the truck driver was also guilty of a dereliction of duty that also proximately contributed to the occurrence of the collision. Was the jury's persuasion that he too was negligent patently discordant with the weight of the evidence? Such we conceive to be the subject of our consideration.
Initially the jury doubtless recognized Taliaferro's awareness of the enormous weight of the truck and its freight, and should have foreseen the degree of proportionate care needed in governing its mobilization particularly in a sudden emergency. In approaching the intersection the truck was being operated at a velocity slightly less than the speed limit of 50 miles per hour. Moreover, it might be inferred that Taliaferro had reason to anticipate that an emergent application of the brakes would cause a forward displacement of the steel billets against and into the cab of the truck, thus disabling him from controlling the vehicle. The circumstantial and photographic evidence indicating that such a thing actually happened attained a level of rational probability.
Significantly, there were no marks visible on the surface of the highway denoting that the brakes of the truck had been vigorously applied before the occurrence of the collision. The passenger vehicle had reached the easterly lane of the highway. A circumstance carrying a variety of inferences and implications is the acknowledged fact that the truck struck the passenger car with such force that the latter was crushed beneath the truck and so propelled along the highway a distance of 292 feet, 9 inches.
A calculation of the comparative distances traveled by the respective vehicles before the collision and after Taliaferro observed the passenger car in the intersection is illuminating. The jurors who favored the verdicts against Taliaferro and his employer were justified in our opinion in concluding from the evidence that Phillips either neglected *427 to observe the approaching truck or recklessly underestimated its speed, and that Taliaferro was in fact coincidentally operating the truck at an inordinately high and dangerous rate of speed in the existing conditions and in a careless disregard for the safety of those who manifestly might attempt to cross the highway.
Phillips' endeavor in the circumstances to emerge from the opening in the dividing island to cross the intersection ahead of the truck may not have been demonstrably previsional to Taliaferro, but it was for the jury to say in the light of common knowledge and experience whether such an attempt would be modernly within the orbit of plausible likelihood.
I stated for the Appellate Division in my opinion in Gentile v. Public Service Coordinated Transport, 12 N.J. Super. 45 (App. Div. 1951), with the concurrence of a present member of the United States Supreme Court, that "what the reasonably prudent individual would do or refrain from doing in our modern environment of hazards cannot rationally be measured today by the probable behavior of our ancestors in the conditions of the age in which they lived."
The present well-known fact that some, indeed too many, motorists are careless has now become a factor in the consideration of the degree of care exercised by another. Foresight of danger is a material element of negligence. Taliaferro was some 300 feet from the intersection when he first saw the Phillips automobile in the opening of the safety island.
We therefore express the view that there was adequate evidence to warrant the factual findings of the jury relating to the liability of the defendants Taliaferro and Miele's Motor Transportation, Inc.
Another reason assigned for a new trial by these defendants was that the awards of damages were exorbitant. Judge Ewart, in consequence of his conclusion that there was an absence of evidence of the alleged negligence of the defendant *428 Taliaferro, logically refrained from specifically treating the asserted excessiveness of the compensatory awards. Counsel for the interested parties have been afforded the opportunity to debate this subject before us.
Like the determination of the existence of negligence, the admeasurement of compensatory damages was preeminently a question of fact appropriately to be determined by the jury. Decisions expressive of the limitations of appellate court intrusions are Somerville & Easton Railroad Co. ads. Doughty, 22 N.J.L. 495, 497 (Sup. Ct. 1850); Gee v. Moss, 108 N.J.L. 160 (E. & A. 1931); Moore v. Public Service Coordinated Transport, 15 N.J. Super. 499 (App. Div. 1951); Lukasiewicz v. Haddad, 24 N.J. Super. 399 (App. Div. 1953); Lindroth v. Christ Hospital, 21 N.J. 588 (1956).
Omitting here a particularized contrast of the respective allowances of damages with the relevant and pertinent evidence, suffice to state that we are not persuaded that the compensatory awards are so faulty, distorted, and unsound as to evince the improper influences of sympathy, mistake, partiality, prejudice or passion, save in the awards of $5,000 to the plaintiffs Charles and Regina Irsig and a like sum to the general administratrix of Richard Wilson, deceased.
Supplementary information discloses that in announcing the above mentioned awards of $5,000, the jury in each instance expressly indicated that the sum was granted "for medical" and "for medical purposes." We discover that the medical charges for the care and treatment of Marion Irsig totaled $1,906.40, and those for the medical treatment of Richard Wilson amounted to $1,698.60.
If those allowances were, as announced, intended by the jury to constitute only a reimbursement for the medical expenses incurred respectively by the designated plaintiffs, they were conspicuously inaccurate and substantially unsustainable. True, the general administratrix of the Wilson estate sued for damages for the decedent's lifetime pain and suffering, and the parents of Marion Irsig sought damages for the loss of services of their injured daughter, but those claims do not *429 appear to have been embraced by the awards and rather to have been either excluded or ignored.
The logical sequence is that unless the plaintiffs involved consent in appropriate form to accept in lieu of the awards of $5,000 the respective reimbursing amounts of the stated medical expenses, a new trial confined solely to the total damages reasonably recoverable by the general administratrix of the decedent Wilson and to the per quod damages to which the Irsig parents are entitled is ordered.
The prior order for a new trial except in the respect herein modified is reversed.