53 N.J. Super. 455 (1958)
147 A.2d 800
PAUL CERMAK, PLAINTIFF-RESPONDENT,
v.
THE HERTZ CORPORATION, ETC., DEFENDANT AND AETNA METALCRAFT, INC., ETC., AND OLINTO J. DIGEORGE, JOINTLY, ETC., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 2, 1958.
Reargued June 16, 1958.
Decided July 8, 1958.
*457 Before Judges PRICE, HANEMAN and SCHETTINO.
*458 Mr. Sylvester S. Garfield and Mr. Philip L. Nadler argued the cause for plaintiff-respondent (Mr. Victor P. Mullica, on the brief; Mr. Pasquale Pipi and Messrs. Gross & Garfield, attorneys).
Mr. Roger F. Lancaster argued the cause for defendants-appellants (Mr. Howard T. Rosen on the brief; Messrs. Schreiber, Lancaster & Demos, attorneys).
The opinion of the court was delivered by SCHETTINO, J.A.D.
This is a negligence action arising out of an automobile accident. The case was tried in the district court after having been transferred there from the county court. The cause of action as against defendant Hertz was dismissed by consent of the parties. The jury returned a verdict in the sum of $15,000 against defendants-appellants and, following a motion by defendants for a new trial, the trial court reduced the verdict to $8,500.
The record of this trial which was not taken stenographically, has been settled pursuant to R.R. 1:6-3. The automobile accident occurred on March 8, 1956. Plaintiff was stopped at the intersection of Mercer and Fremont Streets in Jersey City waiting for heavy traffic on Fremont Street to clear so that he could make a right hand turn on that street when a truck leased from the Hertz Corp. and driven by defendant, DiGeorge for defendant, Aetna Metalcraft, Inc., struck the rear of his car. After counsels' summation to the jury the trial court removed the issue of negligence and limited its consideration to the questions of proximate cause of the claimed injuries and damages.
Appellants contend that this was error. The evidence, as set forth in the record settled by the court, is as follows:
"Plaintiff testified that on or about 10:10 o'clock A.M. on the 8th day of March 1956 plaintiff was operating his passenger automobile in a general westerly direction on and along Mercer Street, which runs east and west, [and that he] gradually stopped at the intersection of Mercer and Fremont Streets, Fremont Street running north and south. Plaintiff was alone in his automobile and it was *459 raining very hard; he intended to go into the nearby Safeway Store's office to repair a typewriter machine. There was no traffic on Mercer Street other than the vehicles of plaintiff and defendant. His automobile stood there at the intersection for two minutes because of the very heavy traffic proceeding north and south on Fremont Street; he intended to make a right turn on Fremont Street in order to park his car and while standing in a stopped position he looked in his rear mirror and saw the defendant's truck some distance away also proceeding in a westerly direction on Mercer Street and when he looked again this truck loomed up and the front of the defendant's truck struck the rear of plaintiff's car `with a pretty good smash' and knocked his car into the intersection and the trunk lid in the rear of plaintiff's car sprung up. Photographs were admitted into evidence as Exhibits marked P-1, P-2, P-3 and P-4; there were no policemen or traffic signs or lights controlling the traffic at this intersection." [Emphasis added.]
"* * * Olinto J. DiGeorge was sworn and he stated he was the driver of the defendant, Aetna Metalcraft Inc., that his truck struck plaintiff's car in the rear; he was driving west on Mercer Street and saw plaintiff's car standing stopped, 40 or 50 feet in front, and `it appeared to me as if the plaintiff would take off again because his rear stop lights went off' whereupon the defendant started up again and when plaintiff failed to move, he struck the rear of the plaintiff's automobile; plaintiff's automobile was proceeding about 15 to 20 miles per hour before it stopped at the intersection.
That it was raining very hard and that when defendant attempted to stop he had to fight his wheel to keep it straight; and skidded into the rear of the plaintiff's car; that the plaintiff got out and complained of pain in his neck; that the defendant had two ton load on a 1956 International; that his brakes were in good condition and it was a new truck. After the accident he saw `oil slickers' on the wet pavement.
On cross examination he testified that the plaintiff [defendant, DiGeorge?] (sic) applied his brakes when the plaintiff did not proceed from his standing position after his stop lights went off and indicated to him that the plaintiff was going to go forward again and because the plaintiff's automobile did not go ahead he hit his brakes and was unable to stop in time. He applied his brakes with great pressure and put on his emergency brake but skidded into plaintiff's standing automobile, admitting he had misjudged plaintiff's movement.
Note by the Court: The Court significantly points out as part of this record that the reference was made by the defendant's driver to `oil slickers' was not explained nor specifically located with respect to the status of the collision. Nothing further was brought out either on direct or cross-examination concerning its extent, cause or effect and was left barren and any casual [causal] connection to the incident involved." (Emphasis added.)
*460 Initially it should be noted that this agreed statement seems to contain an inconsistency insofar as plaintiff testified that he was stopped at the intersection for two minutes, and that during that time he observed in his rear view mirror defendants' truck approaching from some distance away whereas DiGeorge testified that plaintiff's automobile was proceeding about 15 to 20 m.p.h. before it stopped at the intersection. In any event the inconsistency does not present a factual issue which would bear upon defendants' negligence or any suggestion of plaintiff's contributory negligence. Even had DiGeorge seen plaintiff prior to the time plaintiff stopped, no issue is raised by defendants nor inferable from the facts that plaintiff's speed prior to stopping or anything done by him in the act of stopping contributed to the happening of the accident.
Thus the issue of liability has its inception in the facts from the time plaintiff was actually stopped on Mercer Street at the intersection waiting for an opportunity to make a right-hand turn to Fremont Street and defendants' truck was approaching from the rear at a distance of 40 or 50 feet. Plaintiff's rear stop lights went off, and DiGeorge "started up again." It is not self evident from this statement as to whether DiGeorge stopped his truck completely or merely slowed down before "starting up again" and crashing into the rear of plaintiff's motionless vehicle, but it is clear from the record that defendant saw plaintiff stopped at the intersection and that the cause of the collision was the fact that DiGeorge "misjudged plaintiff's movement." He so admits as above noted.
Furthermore, counsel for the defendants in his summation to the jury stated that "he could not find fault with the jury if it found a verdict for the plaintiff on the question of negligence," whereupon the trial court removed this issue from the jury's consideration.
In this context we fail to perceive any conflicting inferences from which the jury could have reasonably returned a verdict on the question of negligence other than in favor *461 of plaintiff. Defendants urge that contributory negligence of plaintiff could be bottomed upon the fact that his rear lights went off as defendants' truck was approaching. This bare contention, without more, is erroneous. There was no duty upon the plaintiff to keep his brake lights lit once his vehicle was stopped, nor to put his car in motion the instant he took his foot off the brake. DiGeorge's absolute reliance upon this factor was as foolhardy as it was impractical.
Therefore, we conclude that the trial court was correct in removing the issue of negligence from the determination of the jury since the record shows that there were no disputed questions of fact nor conflicting inferences to be reasonably drawn therefrom which could be determined by it. Ferdinand v. Agricultural Ins. Co. of Watertown, N.Y., 22 N.J. 482, 493 (1956). In similar situations the courts have often phrased this determination as a matter of law to be decided by the judge and not the jury, but it would seem to be more accurately stated that, in the absence of a factual conflict, the fact-finding function of the jury has no issue upon which it can operate so that it is the duty of the court to accept the facts as they are presented. In a strikingly similar situation in the case of Burr v. Metropolitan Distributors, Inc., 136 N.J.L. 583 at pages 585 and 586 (1948), our Court of Errors and Appeals outlined the principles applicable to such a situation when it said:
"The legal principles applicable to this appeal have been well stated by this court in the case of Crosby v. Wells, 73 N.J.L. 790; 67 A. 295, 299. The court said: `In our country, a verdict may be directed for a plaintiff as well as for a defendant. * * * And the question to be propounded is whether there be any reason why the verdict should not be so directed. * * * The principles with which the answer must accord have been stated in our reports in both positive and negative form. Firstly, the trial court should direct a verdict, when any number of verdicts, if found otherwise than as ordered, would be set aside as without sufficient evidence to support them * * * or when the testimony in the case will not support any other verdict * * *. Secondly, the trial court cannot direct a verdict when any material facts which the parties have been permitted to introduce are in dispute.'"
*462 Appellant also urges that the trial court erred in failing to order a new trial on the grounds that newly discovered evidence was found after the trial which tended to prove that plaintiff had perpetrated a fraud upon the court by intentionally misrepresenting the nature and extent of his injuries. In that regard it should be noted that, from interrogatories, defendants knew that plaintiff had suffered a previous accident on September 8, 1954 while servicing a typewriter and a compensation petition was pending at the time of this trial. The injuries claimed in the compensation petition were in many ways similar to the injuries sustained in the automobile accident insofar as they involved the spine and sciatica, and the nervous system.
Nevertheless the affidavits and the stenographic record of the hearing on defendants' motion for a new trial show many inconsistencies particularly relating to plaintiff's alleged injuries. The principal basis for defendants' motion is the fact that they discovered, immediately after trial, that plaintiff had instituted a third-party negligence action against American Book Stratford Press, Inc. (Docket No. A-725-56, wherein this court upheld the trial court's dismissal on the ground of no proof of negligence) at the same time he had filed the workmen's compensation petition against his employer, Remington Rand. In connection with that third-party action, plaintiff was examined by American's physician, Dr. Klaus, approximately five weeks prior to the trial of the case at bar. The affidavit and oral testimony of Dr. Klaus at the hearing on defendants' motion in this case established that plaintiff never mentioned the automobile accident and the injuries resulting therefrom.
Plaintiff did not deny this contention but maintains that he was never questioned about any occurrences subsequent to the typewriter incident and did not volunteer the information. His position was corroborated by a representative of his attorney who was at all times present during the examination, and the trial court chose to accept this as fact. Dr. Klaus testified that plaintiff's complaints were limited to his arm, back and leg, and that he had "no *463 headaches or dizziness and no change in vision or hearing" and no complaints regarding his head and neck. However, these complaints were the subject matter of plaintiff's claim for damages in the trial of this case just five weeks later.
Despite the conflicting evidence and the inconsistencies which the record of the hearing on this motion for a new trial reveals, we find that the inconsistencies were the result of plaintiff's attempt to separate and allocate his various injuries to the distinct accidents, namely the typewriter fall on September 8, 1954 and the automobile accident on March 8, 1956. This was indeed a difficult thing to do since the whiplash of the automobile accident allegedly affected plaintiff's neck and back, while the fall while servicing the typewriter was claimed to have caused injury to his arm and back. Furthermore, the evidence, including the medical testimony, indicates that plaintiff was both hypersensitive and unduly preoccupied with the nature and extent of his injuries, and the conclusion is inescapable that there was a certain amount of puffing with regard to his subjective complaints. However, this is not tantamount to perjury which is the willful assertion as to a matter of fact, knowing such to be false, with the intent of misleading the court or jury.
"* * * Perjured testimony that warrants disturbance of a final judgment must be shown by clear, convincing and satisfactory evidence to have been, not false merely, but to have been wilfully and purposely falsely given, and to have been material to the issue tried and not merely cumulative but probably to have controlled the result. Further, a party seeking to be relieved from the judgment must show that the fact of the falsity of the testimony could not have been discovered by reasonable diligence in time to offset it at the trial or that for other good reason the failure to use diligence is in all the circumstances not a bar to relief." Shammas v. Shammas, 9 N.J. 321, 330 (1952).
Defendants further contend that they could not have obtained knowledge of the existence of this third-party action prior to the trial by the exercise of due diligence. They urge that plaintiff prejudiced them by failing to amend his *464 answers to interrogatories prior to trial to include Dr. Klaus' name. The interrogatories read:
"14. [If you ever suffered a prior disease or illness state] (a) The names of the doctors who treated you for said condition;"
Certainly Dr. Klaus is not one of those treating physicians whose names are requested.
"19. State the names and addresses of any and all persons, known to the plaintiff, * * * who have knowledge of the facts upon which all the allegations of the complaint are predicated."
It is argued that Dr. Klaus had knowledge of the facts upon which the allegations of injuries in the complaint were premised and that his name should have been supplied. The interrogatory does not request the names of experts upon whom plaintiff intends to rely at the trial. Dr. Klaus is not one of these, in any event. The question, then, is whether the interrogatory should embrace the examining physician of a defendant in another suit.
While the matters disclosed on Dr. Klaus' examination of the plaintiff may be questions of fact, R.R. 4:16-2 expressly immunizes from production or inspection "the conclusions of an expert" (except the report of a physician as limited by R.R. 4:25-2), and it reasonably follows that the requirement in the earlier clause of R.R. 4:16-2 for disclosure of the identity and location of persons having knowledge of relevant facts does not embrace the giving of the names of expert witnesses not within R.R. 4:25-2 to the interrogating party. See Gibilterra v. Rosemawr Homes, 19 N.J. 166, 173 (1955), and also, Barber v. Vaccaro, 32 N.J. Super. 573, 579-580 (App. Div. 1954). Had defendants been more searching in their inquiry of plaintiff concerning the prior accident, they would have discovered information which would have led to further inquiry properly designed to elicit the information which they lacked at the trial. We hold that defendants have not sustained their burden of proving perjury by plaintiff. *465 The action of the trial court in refusing to grant a new trial upon this ground is affirmed.
Finally, we consider the argument of defendants that the amount of damages, as reduced by the trial court, is still grossly excessive. It must be realized that the stability of verdicts and judgments has been protected by the principles and the rules governing appellate review. We cannot substitute our judgment "unless it clearly and unequivocally appears that there was a manifest denial of justice under the law." Hartpence v. Grouleff, 15 N.J. 545, 549 (1954); R.R. 1:5-3. Plaintiff's proved special damages were less than $1,000. His subjective complaints included headaches, pains in his ears and head radiating down through his spine and back, deafness, a heavy feeling in his eyes, pain in back of his head which bothers him constantly, pain in both shoulders and in the center and sides of neck, soreness of the muscles of the neck and the back of ears and pain in the sacroiliac and sciatic nerve which radiates across the bottom of his back. Plaintiff also testified that at the time of the trial he was still suffering from the pains in the head, eyes, shoulders, neck muscles, lower back and right leg. He testified that his hearing had been affected and that he suffered a partial loss thereof. He said he still has trouble in moving the head and neck and that the neck stiffens up easily if he makes any awkward motion which handicaps him especially when working and that he has become nervous since the accident.
We are aware that the admeasurement of damages in personal injury cases is not gauged by any established graduated scale, that within reasonable limits the appraisal of the amount of damages is left to the sound discretion of the jury, and that the value of the award must be appraised in the light of existing economic conditions. Cabakov v. Thatcher, 37 N.J. Super. 249, 258 (App. Div. 1955). However, in view of the compelling proof in the record upon the motion for a new trial that plaintiff had greatly exaggerated the extent of his injuries, although we are convinced that there was no bad faith in this regard, we *466 conclude that this judgment, even as reduced by the court, is clearly excessive. Kress v. City of Newark, 8 N.J. 562, 576 (1952).
We hold that, unless plaintiff consents in an appropriate form to accept in lieu of the judgment of $8,500 the sum of $6,000, a new trial confined solely to the assessment of damages is ordered. Conklin v. Miele's Motor Transportation, Inc., 43 N.J. Super. 420, 429 (App. Div. 1957).
Modified, no costs.
HANEMAN, J.A.D. (dissenting).
I find myself in disagreement with my respected colleagues on the propriety of the ruling of the trial judge that defendants were negligent as a matter of law, and in removing that issue from the jury's consideration.
This is an appeal from a final judgment of the Hudson County District Court and a denial of defendants' motion for a new trial.
Plaintiff brought this action to recover damages for injuries allegedly sustained in an automobile accident caused by defendants' negligence. Suit was originally filed in the Hudson County Court but was transferred to the county district court in accord with the practice. R.R. 4:3-4. The matter was tried before a jury. Plaintiff's suit against the Hertz Corporation was voluntarily dismissed. After summation the trial court, on its own motion, removed the issue of negligence from the jury and restricted it to a consideration of plaintiff's injuries and the quantum of his damages. The effect of this action was to hold, as a matter of law, that defendants were negligent. It resulted, as well, in a legal conclusion that the collision was not the result of unavoidable accident and that plaintiff neither assumed the risk nor was he guilty of contributory negligence. Each of these defenses was raised in defendants' answer. The jury returned a verdict for plaintiff against defendants Aetna Metalcraft, Inc. and Olinto J. DiGeorge in the sum of $15,000.
*467 Defendants moved for a new trial asserting that (1) the trial court erred in removing the issue of defendants' negligence from the jury; (2) the verdict was excessive and a result of mistake, partiality, prejudice or passion; (3) they had "newly discovered evidence." The trial court denied defendants' motion under points 1 and 3, but determined that the verdict was excessive and a result of mistake, partiality, passion or prejudice, and ordered a new trial unless plaintiff would accept a verdict in his favor in the sum of $8,500. Plaintiff accepted and judgment was entered in that amount. Defendants appeal from the final judgment which was so entered and from the trial court's denial of its motion for a new trial.
I shall consider only the removal of the question of negligence from the jury.
Although the removal of the question of negligence from the jury was upon the judge's own motion, the same rules apply as on any motion for judgment. On such a motion "the evidence will not be weighed but all the proofs which support the claim of the party against whom the motion is made must be accepted as true, together with all the legitimate inferences which may be drawn therefrom. When fair-minded men might honestly differ as to the conclusion to be drawn from the proofs, the question at issue should be submitted to the jury." Buchner v. Erie Railroad Co., 17 N.J. 283, 289 (1955).
Negligence is never presumed, it must always be proved. Oelschlaeger v. Hahne & Co., 2 N.J. 490 (1949); Callahan v. National Lead Co., 4 N.J. 150 (1950).
The existence of negligence is pre-eminently one for the jury. Gentile v. Public Service Coordinated Transport, 12 N.J. Super. 45 (App. Div. 1951); Murphy v. Terzako, 14 N.J. Super. 254 (App. Div. 1951).
In order to justify a trial court in finding a defendant guilty of negligence as a matter of law, the facts must so completely and unanimously point to negligence that there remains no question of fact. The tests to be applied have been stated as follows:
*468 In Burr v. Metropolitan Distributors, Inc., 136 N.J.L. 583, 585 (E. & A. 1948), the court said:
"The legal principles applicable to this appeal have been well stated by this court in the case of Crosby v. Wells, 73 N.J.L. 790, 67 A. 295, 299. The court said: `In our country, a verdict may be directed for a plaintiff as well as for a defendant. * * * And the question to be propounded is whether there be any reason why the verdict should not be so directed. * * * The principles with which the answer must accord have been stated in our reports in both positive and negative form. Firstly, the trial court should direct a verdict, when any number of verdicts, if found otherwise than as ordered, would be set aside as without sufficient evidence to support them * * * or when the testimony in the case will not support any other verdict * * *. Secondly, the trial court cannot direct a verdict when any material facts which the parties have been permitted to introduce are in dispute.'"
In Young v. Schmidt, 127 N.J.L. 535, 537 (Sup. Ct. 1942), the court said:
"In this situation, we conclude that the question before us is one of law and not one of fact. In the conceded factual situation, the only inference that reasonable men could draw is that the damage was caused solely by the negligence of the servant of the defendant. It is not unusual for an appellate court to hold that there is no evidence to support a finding for a plaintiff in a negligence case. It is unusual to hold that the facts so completely and unanimously point to negligence that there is no question of fact. Such a holding is not unknown, however. In the case of Hendler v. Meadows, 13 N.J. Misc. 684; affirmed, Zipkin v. Hendler, 116 N.J.L. 137 and Hendler v. Meadows, 116 N.J.L. 176, it was held that the facts so conclusively indicated negligent driving of an automobile that there was no question of fact to submit to the jury and the direction of verdicts for the plaintiffs was proper. See also Vendola v. Public Service Railway Co., 5 N.J. Misc. 285."
In Ferdinand v. Agricultural Ins. Co. of Watertown, N.Y., 22 N.J. 482, 493 (1956), the court said:
"Unquestioning adherence to the ancient doctrine ad quaestionem facti non respondent judices, ad quaestionem juris non respondent juratores, Co. Lit. 155b, that all questions of fact are for the jury in every case is the result of a failure to recognize the progress that has come about in our common-law system. The evolution of the common-law jury trial has been away from the early doctrine, and had developed to the point where we require the determination *469 by the jury only of the existence or non-existence of those facts in issue as to which the minds of reasonable men might differ in the application of their mental processes to the evidence. Therefore, when the proof of a particular fact is so meager or so fraught with doubt that a reasonably intelligent mind could come to no conclusion but that the fact did not exist there is no question for the jury to decide. Likewise, when the proof on a question of fact is so strong as to admit of no reasonable doubt as to its existence, again, there is no question for the jury to decide. In both these cases the court must make the determination and advise the jury accordingly, Haines v. Merrill Trust Co., 56 N.J.L. 312, 313, 314 (E. & A. 1893); 9 Wigmore on Evidence (3d ed.), sections 2494, 2495."
And again, at 22 N.J. 494:
"* * * Where men of reason and fairness may entertain differing views as to the truth of testimony, whether it be uncontradicted, uncontroverted or even undisputed, evidence of such a character is for the jury, Koch v. La Porta, 30 N.J. Super. 388, 391 (App. Div. 1954); Cetofonte v. Camden Coke Co., 78 N.J.L. 662, 27 L.R.A.N.S., 1058 (E. & A. 1910); In re Perrone's Estate, 5 N.J. 514, 522 (1950); Cf. Hoffman v. Lasseff, 110 N.J.L. 122 (E. & A. 1933); Dooley v. Saunders U-Drive Co., 109 N.J.L. 295 (E. & A. 1932); Patterson v. Surpless, 107 N.J.L. 305 (E. & A. 1930); Doran v. Thomsen, 76 N.J.L. 754 (E. & A. 1908); Kirrer v. Bromberg, 113 N.J.L. 98 (Sup. Ct. 1934). But when the testimony of witnesses, interested in the event or otherwise, is clear and convincing, not incredible in the light of general knowledge and common experience, not extraordinary, not contradicted in any way by witnesses or circumstances and so plain and complete that disbelief of the story could not reasonably arise in the rational process of an ordinary intelligent mind, then a question has been presented for the court to decide and not the jury. Mortgage Corp. of New Jersey v Aetna Cas. & Surety Co., 19 N.J. 30 (1955); Ocean Accident & Guarantee Corp., Ltd. v. Lincoln National Bank, 112 N.J.L. 550, 553 (E. & A. 1934); cf. Venghis v. Nathanson, 101 N.J.L. 110 (E. & A. 1925); Tischler v. Steinholtz, 99 N.J.L. 149 (E. & A. 1923); Mahan v. Walker, 97 N.J.L. 304 (E. & A. 1922); McCarthy v. Metropolitan Life Ins. Co., 75 N.J.L. 887 (E. & A. 1908). * * *"
It is the duty, therefore, of the appellate court to examine the record and the legitimate inferences which may be drawn from the facts as stated therein in order to determine whether reasonable men might honestly differ as to the conclusions to be drawn therefrom.
*470 The record of the trial was not stenographically reported and has been settled by the trial court under R.R. 1:6-3. Therefore, this court does not have the benefit of the verbatim statements of the witnesses. The record is in the language of the trial judge and reflects the gist of the actual testimony.
Plaintiff's testimony, as reflected in the settled record, is:
"Plaintiff testified that on or about 10:10 o'clock A.M. on the 8th day of March 1956 plaintiff was operating his passenger automobile in a general westerly direction on and along Mercer Street, which runs east and west, gradually stopped at the intersection of Mercer and Fremont Streets, Fremont Street running north and south. Plaintiff was alone in his automobile and it was raining very hard; he intended to go into the nearby Safeway Store's office to repair a typewriter machine. There was no traffic on Mercer Street other than the vehicles of plaintiff and defendant. His automobile stood there at the intersection for two minutes because of the very heavy traffic proceeding north and south on Fremont Street; he intended to make a right turn on Fremont Street in order to park his car and while standing in a stopped position he looked in his rear mirror and saw the defendant's truck some distance away also proceeding in a westerly direction on Mercer Street and when he looked again this truck loomed up and the front of the defendant's truck struck the rear of plaintiff's car `with a pretty good smash' and knocked his car into the intersection and the trunk lid in the rear of plaintiff's car sprung up. Photographs were admitted into evidence as Exhibits marked P-1, P-2, P-3 and P-4; there were no policemen or traffic signs or lights controlling the traffic at this intersection."
DiGeorge's testimony, as reflected in the settled record is:
"Olinto J. DiGeorge was sworn and he stated he was the driver of the defendant, Aetna Metalcraft, Inc., that his truck struck plaintiff's car in the rear; he was driving west on Mercer Street and saw plaintiff's car standing stopped, 40 or 50 feet in front, and `it appeared to me as if the plaintiff would take off again because his rear stop lights went off' whereupon the defendant started up again and when plaintiff failed to move, he struck the rear of the plaintiff's automobile; plaintiff's automobile was proceeding about 15 to 20 miles per hour before it stopped at the intersection.
That it was raining very hard and that when defendant attempted to stop he had to fight his wheel to keep it straight; and skidded into the rear of the plaintiff's car; that the plaintiff got out and complained of pain in his neck; that the defendant had two ton load on a 1956 International; that his brakes were in *471 good condition and it was a new truck. After the accident he saw `oil slickers' on the wet pavement.
On cross examination he testified that the plaintiff [sic] applied his brakes when the plaintiff did not proceed from his standing position after his stop lights went off and indicated to him that the plaintiff was going to go forward again and because the plaintiff's automobile did not go ahead he hit his brakes and was unable to stop in time. He applied his brakes with great pressure and put on his emergency brake but skidded into plaintiff's standing automobile, admitting he had misjudged plaintiff's movement.
Note by the Court: The Court significantly points out as part of this record that the reference was made by the defendant's driver to `oil slickers' was not explained nor specifically located with respect to the status of the collision. Nothing further was brought out either on direct or cross examination concerning its extent, cause or effect and was left barren of any casual connection to the incident involved."
The undisputed facts are as follows:
There was a collision which occurred while plaintiff's automobile was stopped at a street intersection. The accident occurred at about 10 A.M. during a heavy rain storm. Defendant DiGeorge was operating a truck bearing a two ton load, which collided with the rear of plaintiff's automobile.
I recognize that where the record is settled by the court, such record is exclusive and conclusive, subject to correction or modification pursuant to R.R. 1:6-3; 1:6-6. Yoerg v. Northern New Jersey Mtg. Associates, 44 N.J. Super. 286 (App. Div. 1957).
In order to ascertain the proofs which support the claim of defendants and the legitimate inferences which may be drawn from such proofs, it is necessary to examine the above quoted settled record.
Plaintiff testified, in effect, that he remained stationary at the intersection for two minutes, waiting to make a right turn. He looked twice into his rear-view mirror while so stationed and observed DiGeorge approaching  the second time just prior to the collision.
DiGeorge stated, in effect, that "plaintiff's automobile was proceeding at about 15 to 20 miles an hour before it stopped at the intersection." In order for DiGeorge to have so *472 testified he must have seen plaintiff's automobile in motion before it came to rest at the intersection of Mercer and Fremont Streets. DiGeorge is represented as having also testified to the effect that he "saw plaintiff's car standing stopped 40 or 50 feet in front." This, in conjunction with the foregoing, would demonstrate that he was proceeding along Mercer Street and that plaintiff's automobile came to a stop while DiGeorge was still proceeding some 40 or 50 feet to the rear. The court quoted DiGeorge as testifying "it appeared to me as if the plaintiff would take off again because his rear stop lights went off." Implicit in this statement is the conclusion that when plaintiff came to rest on Fremont Street his stop lights were illuminated and that he thereafter released his brakes, extinguishing the lights. DiGeorge is further represented as having testified to the effect that "he started up again and when plaintiff failed to move he struck the rear of plaintiff's automobile." The use by the court of the words "started up" would lead to the conclusion that DiGeorge had observed plaintiff's automobile come to rest and that he either slackened his own speed or completely stopped his truck. If this were not so he could not have "started up again." DiGeorge is further represented as having testified to the effect that "it was raining very hard and that when he [DiGeorge] attempted to stop he had to fight his wheel to keep it straight, and skidded into the rear of plaintiff's car." On cross-examination he testified to the effect that "when the plaintiff did not proceed from his standing position after his stop lights went off it indicated to him [DiGeorge] that plaintiff was going to go forward again, and because plaintiff's automobile did not go ahead he hit his brakes but was unable to stop in time; he applied his brakes with great pressure and put on his emergency brake and skidded into plaintiff's automobile, and admitted that he had misjudged plaintiff's movement."
The damage to plaintiff's automobile as shown in photographic exhibits is not such as would lead to the conclusion that he was struck with great force.
*473 Conceding, merely for the sake of these conclusions, that DiGeorge was proceeding at a speed of no more than 20 miles per hour, it would have taken him no more than two seconds, from the time he observed plaintiff's illuminated stop lights, to apply his brakes, traverse the 40 or 50 feet separating him from plaintiff's automobile, and collide therewith. Had he been proceeding at a greater speed, less time would have been consumed.
From the summary of the testimony of DiGeorge as above analyzed the following sequence of events emerges: DiGeorge was driving a truck with a two-ton load; he and plaintiff were driving west on Mercer Street; directly before plaintiff brought his automobile to rest plaintiff was proceeding at 15 to 20 miles per hour; DiGeorge was 40 to 50 feet to the rear of plaintiff's automobile when the latter ceased motion; DiGeorge then either brought his truck to a complete stop or reduced his speed; when plaintiff released his brakes and thus extinguished his brake warning lights DiGeorge, concluding that plaintiff's forward motion was about to be resumed, either started his truck in motion or accelerated its speed and thereupon collided with the rear of plaintiff's automobile; all of the above occurrences consumed no more than two seconds of time; at the time of the accident it was raining hard and the streets were very wet; after the accident DiGeorge saw "oil slickers" on the wet pavement.
The trier of the facts could consider the conflicting recital of the elapsed time that plaintiff remained stationary at the intersection, i.e., plaintiff's estimate of two minutes and DiGeorge's estimate, deductively arrived at, of two seconds, in weighing the quality and believability of both plaintiff's and DiGeorge's entire testimony. The photographs of plaintiff's automobile could as well have been considered in concluding whether the damage was such as would result from a light or heavy impact.
The trier of the facts could as well have considered, inter alia, whether DiGeorge was negligent in misjudging plaintiff's intention to resume motion and cross the intersection *474 upon the extinguishment of plaintiff's brake lights; whether plaintiff was negligent in releasing his brake lights while observing DiGeorge's approach in the rear view mirror; whether plaintiff was negligent in remaining in the highway at the intersection for two minutes without giving the required signal for a right turn. (R.S. 39:4-126). These elements, taken in connection with the entire testimony, could well have influenced the final factual conclusion as to negligence, assumption of risk and contributory negligence, and the respective reliability of plaintiff's and DiGeorge's testimony.
The mere fact that a vehicle is moving in close proximity to a moving vehicle ahead and keeping up with it does not constitute negligent conduct per se. In Simpson v. Snellenburg, 96 N.J.L. 518, 520 (E. & A. 1921), the court said:
"For the appellants it is strenuously urged that the plaintiff by riding behind the moving truck within a distance of 8 to 20 feet was guilty of negligence per se. The adoption of such a view would result in disastrous consequences to public travel, by preventing the free use of our public roads for all kinds of vehicular traffic and materially impede the proper running of vehicles for both business and pleasure. For it is a matter of common knowledge that conditions of traffic often become such that vehicles are necessarily much closer to each other than eight feet, and, therefore, must be run and guided as to their speed by the vehicles ahead, and to denounce such conduct as negligent per se cannot be justified in good sense. The mere fact that a vehicle is moving in close proximity to a moving vehicle ahead and keeping up with it does not of itself constitute negligent conduct per se, but whether or not it was the negligence of the operator of the rear vehicle contributing to the negligence of the driver ahead in case of an accident to the former, depends upon all the circumstances surrounding the happening of the accident, and almost invariably presents questions of fact for the decision of a jury."
See also Jackson v. Geiger, 100 N.J.L. 330 (E. & A. 1924); Goolsby v. Public Service Co-Ordinated Transport, 9 N.J. Misc. 1158 (Sup. Ct. 1931); Wallach v. Lightening Electric Co., 10 N.J. Misc. 954 (Sup. Ct. 1932); Fine & Jackson Trucking Corp. v. Lehigh Valley R. Co., 110 N.J.L. 385 (E. & A. 1933); Higbee v. Atlantic City & Shore R. Co., 130 N.J.L. 282 (Sup. Ct. 1943).
*475 In the light of the foregoing proof and the legitimate inferences to be drawn therefrom, reasonable men could honestly differ as to whether the accident occurred solely through the negligence of DiGeorge and as to whether plaintiff was guilty of assumption of risk and contributory negligence. The testimony created factual questions which should have been submitted to the jury.
I would therefore reverse and remand for a new trial.